## DAVID L. FISKE *vs.* SAMUEL D. FISHER.

A farmer made a contract with a milk company, through its agent, to deliver milk to its carriers, who transported it to the agent's office, from which the agent forwarded it to the company, which kept him in funds to pay the farmer monthly.  In an action by the farmer against the agent on a count in money had and received for two monthly amounts received by the defendant from the company to pay for milk so delivered, the defendant, to support a defence of payment, offered evidence tending to show that the money due to the plaintiff monthly was payable at the defendant's office; that the plaintiff requested the defendant to forward it to him by the milk carriers, at the plaintiff's risk; that for many months the defendant so forwarded it in compliance with this request; and that the two amounts in question were so forwarded.  But it appeared that the carrier by whom he forwarded them was not employed directly by the company, but was one of two substitutes successively employed by the regular carrier to take his place during his illness, to both of whom the plaintiff delivered milk during their terms of service, which included the second of the two months in question, and by the other of whom he sent to the defendant a bill for the milk delivered during the first of those two months.  And it further appeared that the plaintiff, without having sent any bill therefor, received the money due for an intermediate month by the same substitute by whom the defendant

forwarded the money in dispute; and receipted for it. The plaintiff, besides evidence of demand and refusal of the amounts in question, offered evidence which tended to show that he delivered milk during several months before the arrangement which the defendant contended was made about the transmission of money (but which arrangement the plaintiff denied altogether) in the same manner as afterwards, and that all the time, both before and afterwards, it was his habit to send unreceipted bills by the carrier to the defendant, and, upon receiving them back from the carrier with the money, to return them by the carrier, receipted; but that the carrier, shortly before he became ill, refused to take any but receipted bills from the plaintiff to the defendant, and the plaintiff accordingly sent a receipted bill for the month immediately preceding the first of the two in question, before receiving the money due for that month; that this refusal was with the knowledge of the defendant, who was willing "to have it so done;" and that the plaintiff never sent to the defendant any bill, nor any request for money, by the substitute by whom the defendant forwarded the money in dispute. The judge submitted the case to the jury with general instructions as to the nature of the action; that, to sustain it, the plaintiff must satisfy them that the money in dispute belonged to the plaintiff, was held by the defendant, and was demanded by the plaintiff, and that the defendant neglected or refused to pay it over; but that the defendant had a good defence, if he had paid it to the plaintiff, or to any person authorized by the plaintiff to receive it; and, more particularly, that the defendant was not liable if they should find that the arrangement was made between the parties about the transmission of money, of which the defendant had offered evidence, and that the defendant paid the money in dispute to the carrier's substitute; but if otherwise, that the plaintiff might recover. *Held*, that these instructions were correct and sufficient; and that there was evidence on which it was competent for the jury to find for the defendant.

CONTRACT with a count in money had and received for the price of one hundred and five cans of milk in March, and the same number in May, 1866. Answer, that the defendant had paid to the plaintiff the money claimed.

At the trial in the superior court, before *Rockwell*, J., it appeared that the Westborough Milk Company, whose principal office was in Boston, employed the defendant as their agent at Westborough; and that the defendant made a contract with the plaintiff to deliver milk at Grafton to carriers who were employed by the company to convey it to the defendant, who forwarded it from Westborough to Boston. The plaintiff offered evidence tending to show that he began to deliver milk in this manner in December 1862, and from that time until March 1866 was accustomed, at the end of each month, to send to the defendant by the carrier an unreceipted bill for the price of the milk delivered during the previous month; that the defendant, who was regularly supplied by the company with money to make the monthly payments, was accustomed to send back by

the carrier the amount of the bill, with the bill itself to be receipted; that the receipted bills were usually returned to the defendant by the carrier within a month, though sometimes not for two or three months; that between December 1862 and March 1866 there were three successive carriers, Andros, Goodell and Jasper Fay; "that the plaintiff agreed with Andros to bring him the money, and the same arrangement was subsequently made with Goodell; and that to Jasper Fay the plaintiff's custom was, to hand the unreceipted bill and say that he would like the money on it, which Fay brought to him on such request," until, in March 1866, when the plaintiff handed Fay the unreceipted bill for February, Fay told the plaintiff "that he should not take any more bills for him, unless receipted, and that the defendant was willing to have it so done," and the plaintiff accordingly sent that bill receipted and received the money in return.

It appeared also that Jasper Fay became ill in April, and hired and put on the route a young man named Whitney to serve as a carrier in his stead until the middle of August, except during part of April, when George Fay, Jasper's brother, took the place; and the plaintiff's evidence tended further to show that he never sent any bill to the defendant by Whitney, nor ever asked Whitney to bring money to him, nor had any understanding with Whitney that he should bring it, nor ever received from Whitney or any other person the amounts due for milk which he delivered to the carrier in March and May 1866, although they were sent by the company to the defendant to be paid over to the plaintiff, and the plaintiff made demand on the defendant for them in September.

The defendant offered evidence which tended to show that in April 1863 he made the contract with the plaintiff to supply milk, and at that time informed the plaintiff that the amounts to become due for milk were payable at the defendant's office in Westborough; that the plaintiff then asked, as a matter of convenience to himself, and the defendant assented, that the moneys should be sent to him by "the milk carriers" at the plaintiff's own risk; that "the money was always sent by the successive

carriers, pursuant to this arrangement;" and that, in pursuance of the same, the amounts in controversy were sent to the plaintiff by Whitney; that he received the plaintiff's bill for milk supplied in March, but by whose hand he received it the defendant could not say; that he never received any bill for the milk supplied in May, but sent the money without it; and "that Whitney told him that the plaintiff wanted the money." There was further evidence tending to show that it was George Fay who brought the March bill to the defendant during the month of April, with "the usual word" that the plaintiff "wanted his money;" and that it was in May that the defendant sent the amount of it by Whitney. But the plaintiff denied much of the evidence of the defendant, particularly that portion of it relating to a contract made in April 1863; or that he ever requested of the defendant that the moneys should be sent by the carriers; or ever assumed the risk of their being so sent; or ever sent any message by Whitney that he wanted the money.

With regard to the April bill, there was evidence which tended to show "that the defendant, having received from Whitney a message purporting to be from the plaintiff to send the money, made out that bill, and sent the money by Whitney about the first of July to the plaintiff, with the bill for the plaintiff to receipt, which the plaintiff did," and that, "in an interview in September 1866 between the plaintiff and the defendant, the plaintiff expressed surprise at receiving the April money after having had word from the defendant that the bills must be receipted before the money was sent, and the defendant replied that Fay said it would be more convenient, and the defendant was willing to have it so; and there was no other evidence that the defendant knew what Fay had communicated to the plaintiff" concerning the receipting of bills.

The plaintiff asked the judge to instruct the jury "that if, on all the facts and circumstances in the case, they were satisfied that Whitney was the agent of the defendant to carry the March and May money to the plaintiff, or was authorized by the defendant so to do, then the plaintiff was entitled to recover; also, that the acts and conduct of the defendant in regard to the March, April

and May money were competent evidence, as tending to show that the original contract testified to by the defendant was at an end, or else was, as to such money, disregarded; also, that, if they were not satisfied that Whitney was the agent of the plaintiff to carry the money, or authorized by him so to do, the defendant was not discharged from his liability by reason of having sent the money by him to the plaintiff; also, that, if the defendant was cognizant of the refusal of Jasper Fay in March to carry any more money to the plaintiff unless receipted bills were sent, and the same was known to and assented to by the defendant, and if they were satisfied that the agency, if any such existed, was so far modified, then the defendant was not discharged from his liability by reason of sending the money by Whitney."

The judge declined to give these instructions; and instructed the jury as follows : " The count on which the action goes to the jury is for money had and received. To sustain his action upon this count, the plaintiff must satisfy the jury that the money sued for belonged to him, that it was held by the defendant, that the plaintiff demanded it, and that the defendant neglected or refused to pay it over. The evidence tends to show that the defendant, acting as agent of the Westborough Milk Company, made out the accounts for March and May for the plaintiff's milk ; and that the money was sent by the company in Boston to the defendant, their agent, to be paid over to the plaintiff. Money in that situation may be recovered in an action for money had and received, although the defendant received it as agent. If he refuses, upon proper demand, to pay it over, he is personally liable for it in this action. But if he has paid it, or if he has delivered it to any person to whom he was authorized by the plaintiff to deliver it for him, he has a valid defence. The defendant contends, and offers evidence to prove, that the plaintiff requested him to send the money, for the several months, by the milk carriers; and that, although he told the plaintiff that the money was payable at the defendant's house in Westborough, yet if he desired it he would so send it. If that was the agreement between the parties, and if the defendant paid the

money to the milk carrier Whitney, he is not liable; for his payment to Whitney discharged that obligation. But if there was no such agreement the plaintiff may recover."

. The jury found for the defendant; and the plaintiff alleged exceptions.

*H. B. Staples*, for the plaintiff. 1. The plaintiff had a right to have the question whether Whitney was his agent as to the March and May money determined by all the circumstances of the case; and the judge erred in restricting the agency to the alleged contract in 1863, which, so far as it related to the manner of carrying. the money, was not merely an agreement between the plaintiff and the defendant, but an arrangement for an agency of the carriers which would require the carriers' assent, and which might be revoked by the plaintiff or renounced by the carriers with the knowledge of the defendant. The instructions given wholly ignored the evidence of conduct of the defendant which tended to show a modification or dissolution of the agency of the carriers as to the March and May money The plaintiff was entitled to a specific instruction upon the effect of that evidence, as tending to show that no money was to be sent by the carriers unless receipted bills were first sent by the plaintiff. The refusal of Fay, Whitney's employer, with the knowledge of the defendant, to carry any more money unless the receipted bills were first sent, was a renunciation of the agency, if any, that previously existed. Story on Agency, § 478.

2. Whitney was not a carrier within the meaning of that alleged contract, inasmuch as he was employed by Fay, and not by the company. The plaintiff might be willing to trust money with a person whom the company would select, though not with the appointee of another. Fay could not delegate his authority. *Brown* v. *Bull*, 3 Mass. 211. *Emerson* v. *Providence Hat Manufacturing Co.* 12 Mass. 237, 241, 242. *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 177. Story on Agency, §§ 13, 14.

3. Even on the agreement as claimed by the defendant, if the plaintiff sent the March bill to the defendant by George Fay with the request for his money, the defendant could not avai.

himself of the agreement so as to send the money two months afterwards by Whitney.

*P. E. Aldrich & A. G. Biscoe,* for the defendant.

CHAPMAN, C. J.   The instructions given were full and correct, and adapted to the case; and there was evidence upon which it was competent to the jury to find for the defendant.

*Exceptions overruled.*